## SCHWEYER v. THOMAS.[*]
### Patent Appeal No. 3190.

Court of Customs and Patent Appeals.
Feb. 26, 1934.

*Rehearing denied April 2, 1934.

Melville Church and C. B. Des Jardins, both of Washington, D. C., for appellant.

Synnestvedt & Lechner, of Philadelphia, Pa. (Edward H. Davis, of Philadelphia, Pa., Wm. M. Cady, of Pittsburgh, Pa., and Paul Synnestvedt, of Philadelphia, Pa., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office, awarding priority of invention as to all four counts of the issue to appellee. The interference was declared between appellee's patent, No. 1,693,626, issued December 4, 1928, upon an application filed November 27, 1926, and the application of appellant, serial No. 698,533, filed March 11, 1924. Appellee is therefore the junior party, and, if there be an interference in fact between the two applications, appellee's patent was inadvertently issued.

The four counts of the issue relate to automatic brake apparatus, and read as follows:

"1. In a fluid pressure brake, the combination with a brake pipe, of two reduction reservoirs, means operated upon a venting of fluid under pressure into either reservoir for effecting a reduction in brake pipe pressure, one reservoir being connected for venting purposes only after the venting of fluid from the brake pipe due to venting of fluid under pressure to the other reservoir has ceased.

"2. In a fluid pressure brake, the combination with a brake pipe, of a first reduction reservoir, a second reduction reservoir, and means for first venting fluid under pressure to the first reservoir to effect a reduction in brake pipe pressure and then to the second reduction reservoir to effect a second reduction in brake pipe pressure, said reservoirs being connected the one to the other only after the first reduction in brake pipe pressure has been completed.

"3. In a fluid pressure brake, the combination with a brake pipe, of a first reduction reservoir, a second reduction reservoir in-

itially out of communication with the first reservoir, and means for first venting fluid under pressure to the first reservoir to effect a reduction in brake pipe pressure and then only after the first reduction ceases to the second reduction reservoir to effect a second reduction in brake pipe pressure.

"4. In a fluid pressure brake, the combination with a brake pipe, of a first reduction reservoir, a second reduction reservoir, a valve device having a position in which the first reduction reservoir is connected to the second reduction reservoir, and valve means having one position for connecting one side of said valve device to the atmosphere and another position in which fluid under pressure is supplied directly to said valve device."

The interference, as originally declared, had only the first of these counts as an issue; said count being claim 1 of the Thomas patent and claim 80 of the Schweyer application. Subsequently Schweyer filed a motion to add counts, asking that claims 81, 82, and 83 of the Schweyer application, corresponding to claims 2, 3, and 4 of the Thomas patent, be added as counts to the interference. During the pendency of this motion, Thomas filed a motion to dissolve the interference as to the one count then in issue on the ground that Schweyer could not make the claim corresponding to the count and on the ground that Schweyer was estopped to make the claim. He also opposed, upon the same grounds, the motion by Schweyer to add counts as aforesaid. Both of these motions were disposed of by the Examiner of Interferences in a decision on April 3, 1931; Thomas' motion to dissolve being denied, and Schweyer's motion to add the three counts now forming counts 2, 3, and 4 of this interference being granted. The interference was thereafter redeclared with said counts added. No preliminary statements were filed. Neither party took testimony, and an order was entered against Thomas requiring him to show cause why judgment on the record should not be entered against him. Thomas responded to this with a statement reviewing the matters involved in the history of the case and asking that judgment be rendered against Schweyer. Thereupon the Examiner of Interferences awarded priority of invention as to all four counts to the party Schweyer, appellant here. Upon appeal to the Board of Appeals, said tribunal held that Schweyer could not make counts 1, 2, and 3 of the issue, and also held that, inasmuch as in another interference, No. 53,166, between the same parties, involving

appellant's application before us and a patent to appellee, No. 1,533,481, issued April 14, 1925, upon an application filed April 9, 1923, the same invention was involved as is embraced in counts 1, 2, and 3, and priority of invention was therein awarded to Thomas, the Board could not, in view of the record in that interference, here award priority of invention to Schweyer, even if he could make the claims corresponding to said counts here in issue.

As to count 4, the Board concurred with the Examiner of Interferences in holding that Schweyer could make the claim corresponding to this count. It also held, however, that priority of invention upon this count should also be awarded to Thomas, stating as its reason therefor as follows:

"There was no subject matter corresponding to count 4 in the prior interference, yet in Schweyer's case the count is drawn on the same showing of apparatus that was involved in interference No. 53,166. The features of count 4 are therefore inseparably associated with the testimonial record on which the decision of priority as to the counts of Interference No. 53,166 was based. We cannot perceive how Schweyer can prevail as to count 4 in view of adverse decision rendered in that interference concerning the same Schweyer mechanism, and as to which no distinction was made in the testimony."

The Board, for the reasons stated by it, reversed the Examiner of Interferences upon counts 1, 2, and 3 with respect to Schweyer's right to make said counts, and reversed said Examiner upon all counts with respect to priority of invention, and awarded priority of invention to Thomas upon all the counts in issue.

The general nature of the invention here involved is concisely stated in appellant's brief, as follows:

"The invention in controversy has to do with automatic air brake equipment for use more particularly in automatic train control systems and the purpose of the invention is to provide mechanism which will automatically cause an application of the brakes in two stages. When an engineer controls the air brake system manually through the engineer's brake valve, he frequently makes what is called a 'split reduction.' That is to say, he will first manipulate the valve so as to vent the brake pipe and cause a first application of the brakes and then, after an interval, will again vent the brake pipe, making a second reduction in brake pipe pressure and a second applica-

tion of the brakes. The invention relates to mechanism for producing automatically such a two-stage or split reduction in brake pipe pressure. An important feature of the invention claimed resides in means whereby the two reductions in brake pipe pressure are spaced apart at a sufficient interval so that the first reduction will be completed before the second reduction is initiated."

■ The counts in issue were all copied by appellant from the patent to Thomas here in interference, and it is of course conceded that the invention is fully disclosed in said Thomas patent. It is also conceded that Schweyer's application discloses a two-stage brake pipe pressure reduction, but the issue, so far as counts 1, 2, and 3 are concerned, is whether he discloses that the first reduction will be completed before the second is initiated.

The mechanisms of the respective parties are complicated and cannot be intelligently described without the use of drawings. After careful study we have concluded that the Board of Appeals was correct in its holding that Schweyer does not disclose an arrangement of mechanism whereby the second brake pipe pressure reduction begins *only* after the first reduction has been completed, as called for by each of said counts 1, 2, and 3. In Thomas the second reduction cannot begin until the first reduction is completed. In Schweyer the second reduction may or may not begin before the first reduction is completed. It is true that Schweyer discloses intervals of time between the beginning of the first reduction and the beginning of the second reduction, but, under his disclosure, when the interval has elapsed, the second reduction begins irrespective of whether the first reduction has been completed or not.

Appellant relies upon certain recitals in his specification to support his contention that his second reduction begins only after the first reduction has been completed. We quote a few illustrative recitals relied upon by appellant:

"* * * an interval of time is required before the piston 177 and valve 176 reach forward position to bring the channel 189 in registration with the ports 183 and 186. The length of the interval of time will depend on the size of the aperture 194, and may be increased by connecting a chamber or tank 195 with the cylinder 174, inasmuch as the tank 195 must be filled in addition to the space in the cylinder 174 in rear of the piston 177. * * *

"In this way, a primary reduction in train pipe pressure is obtained at once, to provide a slight application of the brakes, and then, after a predetermined interval, a second reduction in train pipe pressure is obtained, to apply the brakes further. These successive reductions in train pipe pressure will enable the train to be retarded without sudden jars or shocks, such as when an emergency brake application is made. * * *

"* * * The length of the interval of time between the reductions in train pipe pressure will depend on the size of the aperture 194 and the size of the tank 195 if such tank is used. * * *"

We think that these quotations show that, while Schweyer discloses intervals between reductions, he nowhere discloses and does not teach that the first reduction shall be complete before the second reduction begins. True, he discloses two reductions of brake pipe pressure, but he could, and we think ordinarily would, secure them by beginning his second reduction before his first reduction was completed, while the essence of the invention here involved is the completion of the first reduction before the second reduction is begun.

We find no error in the decision of the Board that appellant cannot make counts 1, 2, and 3, and that priority of invention thereon should be awarded to appellee, Thomas.

■ With respect to count 4 the Board concurred with the Examiner of Interferences in finding that appellant can make this count, and we are of the same opinion. It will be observed that this count does not contain the element, found in the other three counts, that the first reduction shall be completed before the second reduction is begun.

As hereinbefore indicated, the Board, while holding that appellant could make count 4, awarded priority of invention thereon to appellee upon the basis of its decision in a prior interference, No. 53,166. The record in said interference No. 53,166 was not made a part of the record in the case at bar. Said prior interference is before us in patent appeal No. 3176, and is concurrently decided herewith. 68 F.(2d) 953, 21 C. C. P. A. ——.

In addition to the discussion of the Board of Appeals hereinbefore quoted from its decision, the Board also stated as follows:

"In accordance with the above conclusions we hold that Schweyer has not the right to make counts 1, 2 and 3 and accordingly priority must be awarded to Thomas as to these counts. Further, that Schweyer can make count 4 but that since this count is

readable on the Thomas patent No. 1,533,481, and since it is based on the same Schweyer showing involved in interference with that patent which terminated adversely to Schweyer, he is not entitled to prevail as to this count."

Said patent to Thomas, No. 1,533,481, is contained in the record before us in connection with appellee's motion to dissolve the interference. It was urged before the Patent Office tribunals by appellee as a ground of estoppel against appellant that said patent and appellant's application here involved were in prior interferences, and that appellant should have presented the counts here in issue, if he can make them, in the previous interferences between the parties. Appellant, on the other hand, took the ground that, inasmuch as appellee had applied for and received a patent containing claims from which the counts here in issue were copied, he was estopped from claiming that appellant should have presented such or similar counts in prior interferences between the parties. The same respective contentions are made here.

It appears from the record that, to meet this contention of appellant, appellee admitted that his patent here in interference was inadvertently issued, and stated that he had filed an application for reissue of said patent, omitting the four claims which correspond to the counts here in issue.

With respect to this matter the Examiner of Interferences and the Board of Appeals properly held that the fact that appellee had filed said application for reissue could not affect the decision in the case at bar, since appellee might at any time withdraw said application for reissue.

It also appears that the Primary Examiner has suspended action upon said application by appellee for reissue pending termination of this interference.

It will thus be seen that a very complicated and involved situation is presented, and one which is very unusual—so unusual that we have found no precedents to guide us to a proper determination with respect to the disposition of count 4.

We are, however, of the opinion that appellee, so far as this interference is concerned, upon the record before us, is estopped from claiming that appellant should have presented said count 4 in one of the interferences declared between his application here involved and said patent No. 1,533,481, for the reason that appellant had the right to consider the patent here in interference as presumptively valid.

It will be observed from the hereinbefore quoted decision of the Board of Appeals that its decision with respect to count 4 was based upon its decision in interference No. 53,166, holding in effect in the case at bar that the decision in interference No. 53,166, which was adverse to appellant, was controlling of the issue with respect to count 4.

As hereinbefore noted, the record in interference No. 53,166 was not made a part of the record in the case at bar, but neither in the reasons of appeal nor the brief of counsel for appellant, nor upon oral argument, was any point made of this fact. The only reference in appellant's brief with respect to the effect of the decision of the Board of Appeals in interference No. 53,166 is as follows:

"Interference No. 53,166 was consolidated with Interference No. 56,739 and an appeal from the decision of the Board of Appeals in the consolidated interference (Patent Appeal Docket No. 3176) is now pending in this Court. Obviously, if this Court should reverse the decision of the Board in that case, this ground for refusing to award priority to Schweyer, in the present interference, would disappear."

Upon oral argument a similar statement was made by appellant's counsel.

In view of the foregoing, and in view of the fact that we have this day rendered a decision in Patent Appeal No. 3176, interference No. 56,739, with which interference No. 53,166 was consolidated, affirming the decision of the Board of Appeals awarding priority of invention upon the counts there involved to appellee, we find no reversible error in the decision of the Board of Appeals in the case at bar with respect to said count 4 awarding priority of invention to appellee.

For the reasons stated herein, the decision of the Board of Appeals upon all of the counts in issue is affirmed.

Affirmed.